## Levin, Appellant, *v.* Houck.

*Deed—Reservation—Spring—Water—Water pipe—Particular use.*

Where a landowner in conveying by deed certain land adjacent to that on which he resides, reserves to himself a right to entry for the purpose of maintaining a spring "which supplies water for the premises where he now resides," and also for the purpose of maintaining a pipe line which conducted the water from the stream to the premises where he resided, and there is no restriction imposed as to the quantity of water, or the uses to which it is to be applied, there is nothing to prevent the grantor from connecting the pipe line from the spring with another pipe line so as to carry a portion of the water over his premises to another property owned by himself and his brother.

Argued March 7, 1910. Appeal, No. 27, March T., 1910, by plaintiff, from decree of C. P. Pike Co., Oct. T., 1908, No. 2, dismissing bill in equity in case of Isidor Levin v. John D. Houck. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

STAPLES, P. J., found the facts to be as follows:

This case came on to be heard by this court sitting in equity, on bill and answer, and, acting under the practice in a case of this kind, where the facts, as alleged, are not denied, or disputed, the court finds that on June 30, 1904, John D. Houck, the defendant, above named, conveyed to the plaintiff, his heirs and assigns, two certain lots or pieces of land situate partly in the townships of Coolbaugh and Barrett, Monroe county, Pennsylvania, and partly in the township of Greene, Pike county, Pennsylvania, and that the spring, about which the dispute arises, was situate in that part of the said lands contained in the said township of Greene, Pike county.

The deed or conveyance by which said lands were conveyed, contained, inter alia, the following:

"The said John D. Houck also reserves for himself, his heirs and assigns the right of entry upon said premises with workmen, horses and appliances for the purpose of maintaining and improving the spring located on Tract No. 2, which supplies water for the premises where he now resides, and also for the purpose of maintaining, repairing and renewing his pipe line which conducts the water to the premises where he now resides, the course of which said pipe line is as follows Beginning at the said spring, thence south sixty-six degrees west two perches south forty-seven degrees west four perches, south seventy-two degrees west three and two-tenth perches, north sixty-one and one-half degrees west fifteen perches, north seventy-eight degrees west, two and seven-tenth perches, north eighty-six degrees west five and two-tenth perches, north seventy-five degrees west five and two-tenth perches, north sixty and one-half degrees west, five and two-tenth perches, north fifty degrees west seven perches, north sixty-one degrees west six perches, north fifty degrees west three and six-tenth perches, north twenty-four and one-half degrees west four perches, north sixteen and one-half degrees west two and one-half perches, north thirty degrees west four perches, north forty-four and one-half degrees west eight perches, north thirty-five and one-half degrees west, eight perches, north forty-six degrees west eleven and four-tenth perches to the point in the road leading from LaAnna to German Valley, the division line between the land hereby conveyed and other land of the said John D. Houck.

"The said John D. Houck also reserves for himself, his heirs and assigns, the special right of entry upon a tract of land surrounding the spring from which the water is conducted to his said premises, which said tract of land extends one hundred and fifty feet in every direction from said spring, for the purpose of protecting and improving said spring, and for the further purpose of preventing the felling or removal of any timber growing thereon, or the commission of any other act which might have a tend-

ency to destroy or decrease the supply of water furnished by said spring.

"This conveyance is made under and subject to the express condition that no timber growing upon said tract No. 2, within a radius of one hundred and fifty feet from said spring, shall be felled or removed by the said Isador Levin, his heirs or assigns, without the written consent of the said John D. Houck, or his heirs or assigns, nor shall any other act be committed tending to destroy or decrease the supply of said spring or to prevent and hinder the maintenance and improvement of said spring."

The said pipe which conducted the water was two inches in diameter at the place of its connection with said spring, and where connection was made with the house in which the said defendant was residing at the time of the execution of the deed, the diameter of the said pipe was one and one-fourth inches, and that he afterwards made a connection with the said pipe line with another pipe line running across the premises of the defendant in a southerly direction to the South Sterling road, under and across said road, and emerging upon the ground of other property, owned by him and his brother, Charles D. Houck, so that the water is running continuously from said spring through said pipe upon the ground for the use and convenience of the occupants of the houses, viz.:—himself and his brother, Charles Houck.

There is nothing in the case, from which a finding of fact could be established, that the use of the pipe and the water, as above stated, took any more water from the spring than it had before the connection was made, nor that previous thereto any of the waters of said spring flowed in any other direction and was used by the plaintiff, nor that he suffered any appreciable injury from the use of the water as it has been used since said connection of the pipe was made; and, while the plaintiff alleges that he has been and is injured by said connection with said pipe, he does not allege in what way, nor is the court able from this bill, to conclude that he has suffered or is suffer-

ing any damage by the alleged unlawful act of the defendant.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*George S. Munson,* with him *H. Gordon McCouch,* for appellant.—If there is any doubt or ambiguity raised by the language of the deed the ordinary rule of law applies: that the reservation must be construed most strongly against the grantor; in this case the defendant, John D. Houck: Klaer v. Ridgway, 86 Pa. 529.

The fact that the defendant might use the spring for "the premises where he now resides," gave him no right, if the water was not thus exhausted, to increase the size of the pipe line, to extend the same into different localities, and there sell the water or give it away as he saw fit: Woodring v. Hollenbach, 202 Pa. 65; Com. v. R. R. Co., 24 Pa. 159; Hacke's App., 101 Pa. 245.

*W. A. Erdman,* with him *H. T. Baker,* for appellee.— It seems to us that our case is distinctly within the ruling of this court in Corey v. Edgewood Boro., 18 Pa. Superior Ct. 216. See also Davis v. Hamilton, 6 Pa. Superior Ct. 562; Cress v. Varney, 17 Pa. 496; Taylor v. St. Helens, L. R. 6 Chan. Div. 264; Watkins v. Peck, 13 N. H. 360.

OPINION BY HENDERSON, J., July 20, 1910:

This case was heard on bill and answer and the solution of the question involved is to be arrived at by the construction given to the reservation or exception in the deed from the defendant to the plaintiff for the land on which the spring is situated. Prior to that conveyance the defendant had maintained a line of pipe from the spring to the premises where he resided and the substance and essence of the reservation is that the grantor did not part with the water right there existing but on the contrary guarded

against its impairment or diminution by the restrictions, limitations and conditions in the deed set forth. There is no express reservation of the water. The conditions existing on the ground were apparently taken notice of by the grantor and the grantee and the continuance of the water supply provided for. The grantor retained control over the spring for the purpose of maintaining and improving it and the grantee covenanted that he would not do any act tending to destroy or decrease the supply of the spring or to prevent or hinder the maintenance and improvement thereof. As additional security for the preservation of the water privilege the grantor reserved the right of entry over the land around the spring for a distance of 150 feet in every direction from the spring for the purpose of protecting and improving it and for the further purpose of preventing the cutting of any timber growing thereon or the commission of any act tending to decrease the supply of water furnished by the spring. The situation at the time of the grant was this: The spring on the farm to be conveyed was a source of water supply; this supply was made use of by a pipe two inches in diameter at the spring and for a considerable distance and one and one-fourth inches for the remainder of the distance through the farm. Water was constantly flowing through this pipe for the use of the grantor. In making the conveyance of the farm he withheld as much thereof as insured to him a flow of water from the spring; he did not limit himself as to the quantity to be taken and it cannot be doubted that the understanding of the plaintiff was that the defendant was to have all the water which would flow through the pipe. Whether under the terms of the reservation anything more was withheld we need not now consider, but we have no doubt that the defendant was entitled under the terms of his grant to have as much of the water of the spring flow away from the farm as the pipe then in place would permit. The reference in the reservation to "the premises where he (the grantor) now resides" we regard as descriptive merely of the pipe to

which the reservation applies. It did conduct the water
to the defendant's premises before the grant and does still.
Whether any other pipe is connected with the spring
we are not informed, but the reference to the grantor's
premises as descriptive of the pipe was not inappro-
priately made. No restriction was imposed as to the
quantity of water or the uses to which it was to be applied,
and we cannot regard the terms of the grant as control-
ling or regulating the conduct of the defendant in the use
to be made of the water after it reaches his farm. The
location of the pipe on the land conveyed is fixed by
courses and distances, but this location terminates at the
road. Beyond that the grantee did not undertake to reg-
ulate the direction in which the pipe should be laid or the
uses to which the water should be applied. In Corey v.
Edgewood Boro., 18 Pa. Superior Ct. 216, there was a res-
ervation of "the right of way of the railroad now upon said
land twenty-eight feet wide with a double track through,
over and upon said land as said railroad is now located
upon said land," etc. At the time of the grant the railroad
was used for the transportation of coal from certain mines
to a trunk line railroad, but at a later time a portion of it
only was used and that for the transportation of lumber
on cars drawn by horses. The contention was that in
view of the purpose for which the railroad was built and
used at the time of the grant the implication was that the
parties in making the reservation intended that the right
of way was only to be used for the transportation of coal
from the Hampton Coal Mines and that when coal should
cease to be taken from the mines the right of way should
revert to the adjoining owner. Under such circumstances
the language of the deed was held to be descriptive of the
location of the railroad on the grantor's land and not of
the use to be made of it. In like manner in Davis v.
Hamilton, 6 Pa. Superior Ct. 562, the grant was "of the
free use and privilege of a certain stream of water which
now runs through to the property hereinbefore conveyed
and the unobstructed right of conveying said water in an

open race, or water course to the saw, plaster and feed mill as it is now running," etc.   This was held not to give to the successors in title to the grantor a right of action against the grantee or his successors in title for changing the use to which the water is put, and this is in accordance with the doctrine that a construction of a grant which would restrict the grantee to the specific use for which it is first applied is not favored and will not be adopted unless the language of the grant unmistakably indicates an intention to restrict the use: Cress v. Varney, 17 Pa. 496; 4 Leading Cases on Law of Real Property, 334.   The appellant contends that the decision in Woodring v. Hollenbach, 202 Pa. 65, should control this case, but it will be seen on examination of that case that the water reserved was expressly limited to the use of the grist mill.   The court held that water for the use of the grist mill clearly meant that the water should be used as the power in operating the mill and that this was a restriction of the use to that particular purpose.   There is no room for debate on the proposition that where there is a clear and express restriction of the use to a particular purpose this is a restriction against any other use.   But the deed under which the appellant claims contains no designation of the use to which the water shall be applied and we find nothing in the deed from which any inference to that effect can be drawn.   The learned judge who heard the case gave it careful consideration in the opinion filed and reached a conclusion which the plaintiff's title supports.

The decree is affirmed.